*279 OPINION OF THE COURT
Carol Berkman, J.
Defendant, indicted for murder in the first degree (intentional murder in the course of a robbery), murder in the second degree and robbery in the first degree, has moved for an order dismissing the indictment and compelling the People to re-present to a new grand jury and, in re-presenting, to instruct on manslaughter in the second degree pursuant to Penal Law § 125.15 (3).[1] The ground for this application is that information discovered subsequently to the original grand jury presentation supports the defendant’s claim, in his statements to the police, that he killed the victim at the victim’s request,[2] and contradicts the evidence that the victim was not suicidal.
The original presentation was factually sufficient and procedurally proper. The defense agrees that the People did not knowingly present false evidence and did not fail to present exculpatory evidence then known to the prosecution. The indictment is proper in form. The sole ground for dismissal remaining, pursuant to article 210 of the Criminal Procedure Law, is a dismissal in the interests of justice with leave to re-present. While the evidence at trial may present additional facts, at this point a dismissal in the interests of justice is not warranted.
Statutes Involved
Penal Law § 125.15: “A person is guilty of manslaughter in the second degree when: ... 3. He intentionally causes or aids another person to commit suicide.”
Penal Law § 125.25:
“A person is guilty of murder in the second degree when:
“1. With intent to cause the death of another *280 person, he causes the death of such person . . . ; except that in any prosecution under this subdivision, it is an affirmative defense that: ....
“(b) The defendant’s conduct consisted of causing or aiding, without the use of duress or deception, another person to commit suicide. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the second degree or any other crime . . . .”
Discussion
The defendant’s statement to the police (summarized at greater length in footnote 2) is to the effect that he participated in killing the deceased, at the request of the deceased. Contrary to the defense position, this statement makes out murder, not assisted suicide. The report of Governor Cuomo’s blue ribbon panel, on which the defense relies, recognizes that such conduct constitutes murder: “Euthanasia, however, falls under the definition of second-degree murder, as the defendant intentionally causes the death of the victim through his or her direct acts. Because the consent of the victim is not a defense to murder, euthanasia is therefore prosecutable as murder in the second degree.” (Task Force on Life and the Law, When Death is Sought: Assisted Suicide and Euthanasia in the Medical Context, ch 4, at 63 [May 1994].)[3]
The Task Force report recognizes that “there are no reported cases in New York dealing with murder-by-consent, courts in other states have routinely rejected defendants’ requests to instruct the jury on the lesser crime of assisted suicide, rather than murder, where the victim has consented to the defendant’s acts.” (Id.)[4]
2 LaFave, Substantive Criminal Law § 15.6 is to the same effect. “Such [attempted suicide] statutes typically do ‘not contemplate active participation by one in the overt act directly causing death,’ and thus their existence is no barrier to a murder conviction in such circumstances” (id. § 15.6 [c], at 547, cit *281 ing State v Bouse, 199 Or 676, 264 P2d 800 [1953], overruled on other grounds sub nom. State v Fischer, 232 Or 558, 564, 376 P2d 418, 421 [1962]; see also Shaffer, Criminal Liability for Assisting Suicide, 86 Colum L Rev 348, 348 [1986] [“If an assistant participates affirmatively in the suicide, for instance by pulling the trigger or administering a fatal dose of drugs, courts agree that the appropriate charge is murder”]). Shaffer defines participation in suicide “as active involvement that directly results in the death of a suicidal person.” (Id. at 351 n 28.) She defines aiding or assisting suicide “as providing a suicidal individual with the means to commit suicide.” (Id. at 351 n 30.)
Shaffer’s article disagrees with the various decisions holding active participation in a suicide to be murder, and proposes that many of the defendants were acting out of compassion, and some out of fear and/or compassion, rather than malice or for their own profit. Nonetheless, she has to concede (at 360-364) that every reported decision at the time of the writing so holds. Nor has any court been persuaded to this view in the years since the article appeared. Courts continue to adhere to the rule that active participation in the killing of another, even with the consent of the deceased, is murder.
Accepting defendant’s version that he held the knife as the victim thrust himself upon it, and moved the knife so that the victim’s thrusts might have a more deadly effect, this is active participation in the act causing death.
In State v Sexson (117 NM 113, 115, 869 P2d 301, 303 [1994]), the defendant claimed he merely held the rifle in position while the victim pulled the trigger. The court discussed the difference between murder and aiding suicide as turning on whether the defendant actively participated in the overt act directly causing death, and concluded that “holding the rifle in a position calculated to assure Victim’s death . . . transcends merely providing Victim a means to kill herself and becomes active participation in the death of another.” (117 NM at 117, 869 P2d at 305; but see Fister ex rel. Estate of Fister v Allstate Life Ins. Co., 366 Md 201, 212 n 8, 783 A2d 194, 201 n 8 [2001] [“Had Goldman only held the shotgun while Fister pulled the trigger, this could have been construed as participation ‘in a physical act by which another person commits or attempts to commit suicide’ .... By pulling the trigger, however, Goldman has no longer ‘assisted’ a person in killing herself’].)
Similarly, in People v Cleaves (229 Cal App 3d 367, 280 Cal Rptr 146 [1991]), the defendant tied a bathrobe sash around the *282 victim’s neck and to his hands and feet, and held onto the victim’s body, without pressure, as the victim rocked up and down in an attempt to strangle himself. Defendant also admitted he ultimately had to lie on the victim and pull on the sash because the victim was not successful in strangling himself. The court concluded that this was active participation in causing death, and thus murder. (See also Edinburgh v State, 896 P2d 1176, 1995 OK CR 16 [1995]; Broomall v State, 260 Ga 220, 391 SE2d 918 [1990]; Gentry v State, 625 NE2d 1268 [Ct App Ind, 1st Dist 1993]; Turner v State, 119 Tenn 663, 665, 108 SW 1139, 1141, 11 Cates 663, 665 [1908]; State v Couser, 567 NW2d 657 [Sup Ct, Iowa 1997]; People v Matlock, 51 Cal 2d 682, 336 P2d 505 [1959, en banc]; Sanders v State, 7 P3d 891 [Sup Ct, Wyo 2000]; State v Goodin, 726 SW2d 956 [Tex Ct App, Fort Worth 1987], affd en banc 750 SW2d 789 [Tex Ct Crim App 1988]; People v Gordon, 32 P3d 575, 578-579 [Colo 2001].)
In sum, the law does not permit a person to consent to his own murder. That consent does not transform an active killing of another into a suicide. The interests of justice accordingly do not require a re-presentation of this matter to a grand jury and the defense motion is accordingly denied.

. According to defendant, the People are considering moving to dismiss the murder in the first degree and robbery counts. The defense motion does not address those charges.

. In his statement to the police, on which defendant relies for this motion, defendant said the deceased wanted defendant to shoot him and offered to pay by giving defendant his ATM card and PIN number. Defendant said that the deceased explained that his death had to look like a homicide. According to defendant, he held the butt of the knife against the steering wheel while the deceased lunged forward repeatedly. Then, at the deceased’s direction, defendant moved the knife so that it was over the deceased’s heart, and the deceased lunged forward a couple of times more. Defendant said that when he left, the deceased was still alive. Although the medical examiner’s testimony in the grand jury contradicts this version of the manner of death, for the purposes of this decision the court assumes the facts as set forth by the defendant.

. Available at http://www.health.state.ny.us/nysdoh/consumer/patient/ chap4.htm.

. The report cites State u Fuller (203 Neb 233, 241, 278 NW2d 756, 761 [1979]) and State v Cobb (229 Kan 522, 525-526, 625 P2d 1133, 1136 [1981]), both of which decisions support the People’s argument that a person who takes an active role in the killing of another is guilty of murder, notwithstanding that the other wishes to be killed. (People v Jovanovic, 263 AD2d 182, 197 n 5 [1st Dept 1999] [“a person cannot consent to his or her own murder”].)