COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

MIGUEL FUENTES,                                            )

                                                                              )              
No.  08-03-00143-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
243rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20010D03819)

                                                                              )

 

 

O
P I N I O N

 

Miguel Fuentes
appeals his conviction for seven counts of the offense of indecency with a
child.  Counts III, IV, and VI alleged
sexual contact with the victims, a second-degree felony, and Counts I, II, V,
and VII alleged exposure of Appellant=s
genitals, a third-degree felony.  The
jury found the Appellant guilty on all counts and sentenced him to 10 years= confinement for each of the
third-degree offenses and 18 years=
confinement for each of the second-degree offenses, to run concurrent.  In his sole issue for review, Appellant
argues that the State made an improper jury argument which constituted
reversible error.  We affirm.

The record in this
case indicates several occasions in which Appellant exposed himself and had
sexual contact with the victims.  A
summary of these occurrences are as follows.








Around Easter
2000, D.P., Appellant=s
ten-year-old granddaughter, was in the kitchen of Appellant=s home when the Appellant walked into
the room, wearing a long, untucked shirt and a pair of pants.  He called her name and when D.P. turned
around she saw that he had his pants unbuckled. 
He lifted his shirt and exposed his genitals to her.  He told her to go to his bedroom but she
refused.

Sometime between
April and December 2000. D.P. was in Appellant=s
bedroom watching television when Appellant came from the adjacent bathroom into
the room with his pants unzipped.  He
told D.P. to touch his exposed penis and to shake it.  He then proceeded to show her how to move it
forwards and backwards.  She ignored him
and kept watching television.  D.P. later
testified that the Appellant had exposed his private parts to her and had
masturbated in front of her, on several other occasions; however, she stated
that he had never touched her.

In the early
months of 2001, A.M., Appellant=s
granddaughter and D.P.=s
cousin, was living at Appellant=s
home together with her sister and her two brothers when Appellant molested her
and her sister on several occasions.  On
one occasion, Appellant put his hands down A.M.=s
pants and started rubbing her vagina; however, he stopped when Appellant=s wife started knocking on the
door.  On another occasion, Appellant
exposed his penis to A.M. and asked her to masturbate him to the point of
ejaculation.  In an additional incident,
D.P. was in Appellant=s
bathroom when she witnessed Appellant put A.M. on top of the computer table
with her pants and underwear down. 
Appellant then tried to penetrate her with his penis.  He was unsuccessful and stopped when he saw
D.P. open the bathroom door.








Complainant S.M.,
A.M.=s younger
sister, also testified that Appellant had put his hands in her pants and
started rubbing them around her private parts. 
He also showed her his penis on another occasion.  Appellant paid his granddaughters from $1.50
up to $2 not to tell anyone about the incidents, and he threatened to hurt them
if they disobeyed.

On April 25, 2001,
D.P. was at her school when she told her teacher, Debra Emanuelson, that
Appellant had touched her private parts. 
She also told her that she was worried that Appellant had touched her
cousins because they would stay in the closet and cry.  Ms. Emanuelson reported her statement to
the school principal who immediately called Children Protective Services.  Appellant was arrested and was subsequently
charged with seven counts of indecency with a child.  Appellant plead not guilty to Counts III, IV,
and VI which alleged sexual contact with the victims, and Counts I, II, V, and
VII which alleged exposure of Appellant=s
genitals.   The jury found the Appellant
guilty on all counts.

At the punishment
phase of the case, the State called two witnesses.  The first witness was Magdalena Fuentes,
Appellant=s
daughter and D.P.=s
mother.  Magdalena testified that
Appellant had sexually molested her and her sisters between the ages of three
and ten.  She also testified that
Appellant would physically abuse them if either of them refused to perform
sexual acts with him.  The physical
injuries suffered by Appellant=s
daughters were eventually discovered. 
Appellant was confined in Big Springs for physically abusing his
daughters; however, no accusations of sexual molestation were made at the
time.  Magdalena asked the jury to give
Appellant the maximum, twenty years.  The
State also called deputy probation officer, Jesus Urrenda, to testify about the
different types of probation supervision and services offered.








The defense called
Appellant=s sister,
Manuela Gallardo, and his brother-in-law, Leogardo Rodriguez.  They both testified that Appellant=s daughter, Magdalena Fuentes, had
never accused Appellant of any wrongdoing. 
The defense also called Appellant to testify on his behalf.  Appellant testified that he had never been
convicted of a felony in the United States and requested that he be placed on
probation.

At trial, in
accordance with Tex.Code Crim.Proc.Ann.
art. 37.07, _
4(a)(Vernon Supp. 2004), the trial court gave the following instructions to the
jury:

Under the law
applicable in this case the defendant, if sentenced to a term of imprisonment,
may earn time off for a period of incarceration imposed through the award of
good conduct time.

 

Prison authorities may
award good conduct time to a prisoner who exhibits good behavior, diligence in
carrying out his or her work assignments, and attempts in rehabilitation.  If a prisoner engages in misconduct, prison
authorities may also take away all or part of any good conduct time earned by
the prisoner.

 

It is also possible
for the length of time for which the defendant may be imprisoned might be
reduced by the award of parole.  Under
the law applicable in this case if the defendant is sentenced to a term of
imprisonment in Counts 1, 2, 5, or 7, he will not become eligible for parole
until the actual time served plus any good conduct time earned equals
one-fourth of the sentenced imposed.

 

Eligibility for parole
does not guarantee that parole will be granted. 
Under the law applicable in this case, if the defendant is sentenced to
a term of imprisonment in Counts 3, 4, or 6, he will not become eligible for
parole until the actual time served equals one-half of the sentenced imposed or
30 years, whichever is less, without consideration of any good conduct time he
may earn.

 

If defendant is
sentenced to a term of less than four years, he must serve at least two years
before he is eligible for parole. 
Eligibility for parole does not guarantee that parole will be granted.

 

It cannot accurately
be predicted how the parole law and good conduct time might be applied to this
defendant if he is sentenced to a term of imprisonment, because the application
of these laws will depend on decisions made by prison and parole authorities
you may consider the existence of the parole law and good conduct time.  However, you are not to consider the extent
to which good conduct time may be awarded to or forfeited by this particular defendant.

 

You are not to
consider the manner in which the parole law may be allowed to this particular
defendant.

 

During the closing arguments at
punishment, the following exchange took place:








The
State:         Prosecutors often will ask
for 20 years or for the maximum, or for a lot of time in hopes that they will
get half of it.  Folks, I=m looking you right in the eye, and I=m telling you, I am asking you for the
full 20 years and not one day less.  Not
one day less because one day less is one more day then [sic] what we could do
to prevent him from molesting any more children.

 

.               .               .

 

Even if you give him a short prison
sentence, 10 years, he=ll
walk back out on the street in less time then [sic] you can give him.  And I submit--

 

Defense:           Your honor, again, I would reurge
that objection on application of parole in reference to this defendant.

 

The
State:         I=m
not talking about parole, I=m
talking about a sentence less than 20 years.

 

The
Court:        Yes, sir, I=ll overrule the objection, but I will
instruct the jury again, you cannot consider how the parole applies to this
particular defendant.

 

The jury sentenced Appellant to ten
years=
confinement on each of the third-degree offenses and was sentenced to eighteen
years=
confinement on each of the second-degree offenses.

Appellant=s sole issue is that the State
improperly commented during his closing argument at punishment about the effect
that parole law, as submitted to the jury, would have on Appellant=s case.

Standard
of Review








The proper scope
of prosecutorial jury argument allows: 
(1) summation of the evidence; (2) any reasonable deduction from the
evidence; (3) answer to argument of opposing counsel; and (4), pleas for law
enforcement.  Compton v. State,
607 S.W.2d 246, 253 (Tex.Crim.App. 1980). 
Generally, when an argument falls outside of these areas, error
occurs.  Dinkins v. State, 894
S.W.2d 330, 357 (Tex.Crim.App. 1995).  In
order to preserve the error, if any, the accused must obtain an adverse ruling
from the trial court on an objection or a subsequent request that the jury be
instructed to disregard unless the challenged argument is so inflammatory that
its prejudicial effect cannot be alleviated by such an instruction.  Calderon v. State, 847 S.W.2d 377, 383
(Tex.App.--El Paso 1993, pet. ref=d).  However, an accused need not object and seek
relief if the challenged argument is so inflammatory that its prejudicial
effect cannot be cured by the trial court. 
Ledesma v. State, 828 S.W.2d 560, 563 (Tex.App.--El Paso 1992, no
pet.).  Any preserved error is reversible
if the argument was extreme, manifestly improper, violative of a mandatory
statute or injected harmful new facts into the proceeding.  Ledesma, 828 S.W.2d at 563.

Texas courts have
consistently held that juries may not consider parole laws in assessing the
defendant=s
punishment.  Clark v. State, 643
S.W.2d 723, 725 (Tex.Crim.App. 1982).[1]   Instead, a jury may only consider the
concept of parole eligibility with respect to the defendant on trial.  See Tex.Code
Crim.Proc.Ann. art. 37.07, _
4(a).  Prosecutors must exercise caution
when arguing parole eligibility to a jury. 
Taylor v. State, 911 S.W.2d 906, 911 (Tex.App.--Fort Worth 1995,
pet. ref=d).  Consequently, when attempting to explain the
existence of parole law as set forth in the trial court=s
charge, a prosecutor must avoid applying the law to the defendant on
trial.  Clay v. State, 741 S.W.2d
209, 211 (Tex.App.--Dallas 1987, pet. ref=d).








It is not error
for the State to quote or paraphrase the trial court=s
charge to the jury, even if the charge instructs the jury not to discuss the
parole laws.  Jones v. State, 641
S.W.2d 545, 550 (Tex.Crim.App. 1982).  A
reviewing court should assume that the jury followed the instruction as given
and should not reverse in the absence of evidence that the charge confused the
jury.  Colburn v. State, 966
S.W.2d 511, 520 (Tex.Crim.App. 1998).

Improper jury
argument is a non-constitutional error and is therefore reviewable under Rule
44.2(b) of the Rules of Appellate Procedure. 
See Tex.R.App.P.
44.2(b); Mosley v. State, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998).  Rule 44.2(b) provides that:  AAny
other error, defect, irregularity, or variance that does not affect substantial
rights must be disregarded.@  Tex.R.App.P.
44.2(b).

IMPROPER
JURY ARGUMENT

The record
reflects Appellant preserved error with respect to the complained-of jury
argument since he pursued his objection. 
See Calderon, 847 S.W.2d at 383. 
Therefore, we will continue with the analysis set forth in Mosley to
determine the effect of the improper jury argument, and whether it constitutes
reversible error.  See Mosley, 983
S.W.2d at 259; Ledesma, 828 S.W.2d at 563.  The three factors that should be considered
in establishing the effect of an improper jury argument are:  (1) severity of the misconduct (the magnitude
of the prejudicial effect of the prosecutor=s
remarks); (2) measures adopted to cure the misconduct (the efficacy of any
cautionary instruction by the judge; and (3) the certainty of conviction absent
the misconduct (the strength of the evidence supporting the conviction).  See Mosley, 983 S.W.2d at 259.

Appellant alleges
that the trial court erred when it overruled Appellant=s
objection to the prosecutor=s
improper argument about the effect of parole law on the Appellant.  He alleges that the prosecutor=s argument applied the parole law
specifically to Appellant when he stated that:








Even if you give [Appellant] a short
prison sentence, 10 years, he=ll
walk back out on the street in less time then [sic] you can give him.

 

Appellant claims
that the improper argument was not a harmless error because it related the
effect of the parole law to the need to give the Appellant the maximum possible
sentence.  He alleges that the error
should be reversed because it was extreme and manifestly improper.  The State, however, argues that the statement
was not an application of the parole law to Appellant.  The State asserts that when read in context
with the remainder of the prosecutor=s
argument, it is clear that the prosecutor was making a permitted jury argument
in the form of a plea for law enforcement. 
We are not persuaded by this argument. 
Texas courts have consistently held that juries may not consider parole
laws in assessing the defendant=s
punishment; therefore, prosecutors must exercise caution when arguing parole eligibility
to a jury.  See Clark, 643 S.W.2d
at 725; Taylor, 911 S.W.2d at 911. 
When attempting to explain the existence of parole law as set forth in
the trial court=s charge,
a prosecutor must avoid applying the law to the defendant on trial.  Clay, 741 S.W.2d at 211.

In this case, the
prosecutor did not exercise such caution because the prosecutor=s argument applied the parole law to
the Appellant.  See Taylor, 911
S.W.2d at 911.  However, even if the
comment is found to be slightly inappropriate, it clearly does not rise to the
level of severity as to be held Amanifestly
improper.@  See Ledesma, 828 S.W.2d at 563.








Appellant argues
that the comment is comparable to the comment made by the prosecutor in Perez
v. State, 994 S.W.2d 233, 238 (Tex.App.--Waco 1999, no pet.) and should, as
in Perez, be found to be improper. 
However, this case is distinguishable from Perez because, in that
case, the trial court failed to instruct the jury to disregard the prosecutor=s comment immediately after defendant=s objection.  See Perez, 994 S.W.2d at 238.  Nevertheless, after the jurors indicated
their confusion, the trial court in Perez instructed them to follow the
charge and not the prosecutor.  Perez,
994 S.W.2d at 238.  The Court found that
the improper jury argument did not have a substantial effect on the jury=s verdict.  Id. 
We agree with the analysis of Perez and find that the improper
argument in our case did not have a substantial prejudicial effect on the jury=s verdict.

An instruction by
the court to disregard the comment will normally obviate the error, unless the
remark is so inflammatory that the prejudicial effect cannot reasonably be
removed by such an admonishment.  Cooks
v. State, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992).  In the case at hand, the trial court
overruled the objection to this argument; nevertheless, it instructed the jury
to not consider how the parole law applied to this particular defendant.  Therefore, even though the prosecutor=s remark was improper, its effect was
minimized by the judge=s
instruction to disregard.  See Cooks,
844 S.W.2d at 727.  A reviewing court
should assume that the jury followed the instruction as given and should not
reverse in the absence of evidence that the charge confused the jury.  Colburn, 966 S.W.2d at 519-20.  In the case at hand, there is no such
evidence.








To determine
whether the argument had an impact on Appellant=s
sentence, we need to evaluate if the evidence would support the sentence.  See Mosley, 983 S.W.2d at 259.  Considering the evidence presented at trial,
it is unlikely that the jury would have convicted Appellant to less time had
the prosecutor=s
argument not been made.  See Crockrell
v. State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996).  The evidence revealed that Appellant sexually
molested his granddaughters.  In
addition, his daughter testified that she had been sexually and physically
abused from the time she was three years old until the time she was ten.  We conclude that the improper argument had no
impact on the jury Ain the
light of the existence of the other evidence.@  See Crockrell, 933 S.W.2d at 89.

From the above
discussion, we conclude that the argument in the present case was slightly
improper.  However, it is not reversible
error because it was not manifestly improper, it was quickly corrected by the
judge=s
instruction to disregard the application of the parole law to the Appellant,
and there is sufficient evidence to support his conviction.  See Ledesma, 828 S.W.2d at 563; Cooks,
844 S.W.2d at 727.

Accordingly, we
overrule Appellant=s sole
issue and affirm the trial court=s
judgment.

 

 

August
5, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Article 37.07, sec. (4)(a) explicitly prohibits a jury from considering parole
eligibility with respect to the defendant on trial.  See Tex.Code
Crim.Proc.Ann. art. 37.07, _
4(a).